Roland DUFFY, d/b/a Duffy Construction, Appellant (Plaintiff),

v.

Arthur E. BROWN, Jr., and Shootin' Iron Development Company, a Wyoming corporation, d/b/a Jackson Hole Racquet Club, Appellees (Defendants).

Arthur E. BROWN, Jr., and Shootin' Iron Development Company, a Wyoming corporation, d/b/a Jackson Hole Racquet Club, Appellants (Defendants),

v.

Roland DUFFY, d/b/a Duffy Construction, Appellee (Plaintiff).

Nos. 84–307, 84–308.

Supreme Court of Wyoming.

Oct. 31, 1985.

4. See "The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure." 37 Va.L.Rev. 863 (1951).

Robert N. Williams, Jackson, for appellant in Case No. 84–307 and appellee in Case No. 84–308.

Peter F. Moyer of Hartnett & Moyer, Jackson, for appellees in Case No. 84–307 and appellants in Case No. 84–308.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

This dispute arose over the construction of a group of townhouses in Jackson, Wyoming. Roland Duffy, d/b/a Duffy Construction, appellant in Case No. 84–307 and appellee in Case No. 84–308 (hereinafter referred to as "plaintiff"), contends that he was hired to supervise the construction of the entire project, consisting of thirty-five townhouses grouped into eight buildings; Arthur E. Brown, Jr. and Shootin' Iron Development Company, d/b/a Jackson Hole Racquet Club, appellees in Case No. 84–307 and appellants in Case No. 84–308 (hereinafter referred to as "defendants"), contend that plaintiff was hired to supervise only one building. Plaintiff filed a complaint based on theories of fraud, negligent misrepresentation, breach of contract and unjust enrichment. Summary judgment was granted in favor of the defendants on the first two theories, with the remaining being submitted to a jury. The jury denied the breach of contract claim and awarded plaintiff $965 on the unjust enrichment claim. Plaintiff appealed both the summary judgment and the jury verdict. Defendants in turn filed a cross-appeal from the trial court's refusal to award costs to them.

Plaintiff words the issues on his appeal as follows:

I. "IS SUMMARY JUDGMENT PROPER WHERE THERE ARE MATERIAL ISSUES OF FACT CONCERNING FRAUDULENT AND NEGLIGENT MISREPRESENTATIONS?"

II. "IS IT REVERSABLE ERROR FOR THE TRIAL COURT TO REFUSE TO INSTRUCT THE JURY THAT WHEN NO TIME FOR PERFORMANCE IS MENTIONED IN A CONTRACT THAT THE LAW IMPLIES A REASONABLE TIME?"

III. "IS IS [sic] PROPER FOR THE TRIAL COURT TO ENTER JUDGMENT ON A JURY VERDICT FORM THAT IS AMBIGUOUS AND INCONCLUSIVE?"

Defendants word the issue on their appeal as follows:

"When a party makes an offer of judgment under W.R.Civ.P.Rule 68, and the judgment obtained by the offeree [defendant] is less favorable than the offer, is the offeror entitled to reimbursement for costs of depositions * * * and for costs of preparing certain trial exhibits?"

We affirm the holding of the district court in Case No. 84–307 and reverse the holding and remand Case No. 84–308.

### FACTS

From 1973 to 1982, defendant Art Brown managed a joint venture which constructed over thirty condominium buildings and commercial facilities at the Aspens, a/k/a Jackson Hole Racquet Club, which is approximately three miles from Teton Village Ski Resort. Art Brown and his wholly-owned company, Shootin' Iron Development Company, bought the interests of his joint venture partners in April, 1982.[1]

In 1979, Lot 13 of the Aspens was platted for a townhouse/condominium project, with eight buildings. The footings and some foundations were completed in 1979, but nothing further was done until 1982. The project was designed to proceed on a building-by-building basis, depending on "pre-sales" of units within each building; a certain number of pre-sales were necessary to qualify for the bank loan for each building. In January 1982, pre-sales were sufficient to begin Building 4400, the first of the eight buildings.

At defendant's request, plaintiff presented a one-page proposed contract, which read in part:

"DATE
"Jan. 27, 1982
"Proposal submitted to "Art Brown
"JOB NAME
"Jackson Hole Racquet Club Townhouses
"I WILL PROVIDE SUPERVISION AS THE PROJECT SUPERVISOR FOR THE ABOVE PROJECT FOR THE AMOUNT OF 10% OF THE COST OF LABOR AND MATERIAL FOR THE ENTIRE PROJECT. I WILL BE PROVIDING THE OFFICE, HALF OF THE TELEPHONE EXPENSE, HALF OF THE COST OF HEATING THE OFFICE, AND TEMPORARY STORAGE ON THE JOB SITE."

Defendant reviewed this proposed contract, and then had his secretary type on it:
"BUILDINGS:
"4400"
Both parties specifically initialed the number "4400" and signed the contract.

When Building 4400 was substantially completed, in October 1982, plaintiff was informed that he would not be the supervisor of the next building. The conflict was thus joined. Plaintiff claimed that the "BUILDINGS: 4400" was added to the contract to specify the order of construction on the buildings, and that the contract applied to the entire Lot 13 project. Defendant claimed that the "BUILDINGS: 4400" specifically limited the contract to Building 4400, and that the contract would only be binding for a later building if an additional building number was later added and initialed by both parties.

### I

A summary judgment

" * * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * " Rule 56(c), W.R.C.P.

■ The purpose of summary judgment is to eliminate formal trials where only questions of law are involved, *Johnson v. Soulis*, Wyo., 542 P.2d 867, 871 (1975), and to pierce the formal allegations and reach the merits of a controversy where no material issue of fact is present, *Siebert v. Fowler*, Wyo., 637 P.2d 255, 258 (1981). Where there are genuine issues of material fact, summary judgment is improper; but the purpose behind summary judgment would be defeated if a case could be forced to trial merely by asserting that a genuine issue of material fact exists. *Johnson v. Soulis*, supra.

---

1. For the purpose of this case, defendants (Art Brown, Shootin' Iron Development Co. and Jackson Hole Racquet Club) stipulated that they would be treated as one party.

When a motion for summary judgment is granted and appealed to this court, we have the same duty as did the district court judge. We review the same material and apply the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of the court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party who is opposing the motion and gives to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record. *Roth v. First Security Bank of Rock Springs*, Wyo., 684 P.2d 93, 95 (1984).

The elements of a claim for relief for fraud are a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true. *Anderson v. Foothill Industrial Bank*, Wyo., 674 P.2d 232, 238 (1984). A plaintiff who alleges fraud must do so clearly and distinctly, and fraud will not be imputed to any party when the facts and circumstances out of which it is alleged to arise are consistent with honesty and purity of intention. *Reed v. Owen*, Wyo., 523 P.2d 869, 871 (1974). Fraud must be established by clear, unequivocal and convincing evidence, and will never be presumed. *Kincheloe v. Milatzo*, Wyo., 678 P.2d 855, 862 (1984).

The elements of a negligent misrepresentation claim are generally recognized to be as follows: False information supplied in the course of one's business for the guidance of others in their business, failure to exercise reasonable care in obtaining or relating the information, and pecuniary loss resulting from justifiable reliance thereon. Restatement of Torts (Second) § 552, p. 126 (1977).

It is clear from the record that a showing of fraud or negligent misrepresentation was not made by clear and convincing evidence. By his deposition, plaintiff could not designate the factual basis for his fraud claim. He testified:

"Q (By Mr. Moyer) Do you have any belief or evidence to the effect that Art never intended to let you do the whole project right from the beginning; that he always intended to just let you do one building?

"A You wonder about things.

"Q Do you have anything beyond wondering or speculation to indicate that he intended right from the beginning to defraud you?

"MR. WILLIAMS: Are you talking about any indication at any time?

"MR. MOYER: Any indication at the beginning that his intent was to defraud you.

"A He didn't perform to the agreement that we had.

"Q (By Mr. Moyer) Did you have any indication that he never intended to right from the beginning?

"A Not from the beginning. I'm wondering about the number now, but I'm not a lawyer.

"Q So you think that because he had entered this language that he might have intended right from the beginning to be limiting you to one building, is that correct?

"A I never felt that way until just recently, and now I'm concerned about it.

"Q (By Mr. Moyer) Would you say that was a misunderstanding or are you saying that he actually tried to deceive you at that time?

"A I wouldn't know.

"Q Do you have any evidence based on his conduct since the date you signed this agreement, any evidence to the effect that he never intended to let you do more than one building, other than the fact that he didn't give you the second building?

"A Yes, I think so.

"Q What is that evidence?

"A A conversation I had with Jeff Brown.

"Q What was the conversation?

"A He said that it had been going on for some time, that they would perhaps get rid of me.

\* \* \* \* \*

"Q Do you have any other evidence whatsoever to indicate that Art, right from the beginning, didn't intend to give you the whole project and tried to deceive you into thinking that you did have the whole project?

"A I don't really understand what evidence really is. I had a contract that covered the entire project and I don't no longer, apparently, in Mr. Brown's view.

"Q (By Mr. Moyer) And in your view, that contract has been breached, is that right, by Mr. Brown?

"A No longer, I'm not out there working.

\* \* \* \* \* \*

"A \* \* \* The only thing I'm convinced of is that Mr. Brown did not hold up to his agreement."

■ It is clear from plaintiff's deposition testimony that there was no basis for the fraud and negligent misrepresentation claims other than the fact that plaintiff believed he had a contract for the entire project, and defendant believed otherwise. The dispute was over interpretation of the contract, nothing more.

Furthermore, defendant submitted an affidavit wherein he stated:

"6. Any representation or statements made by the undersigned to the plaintiff in connection with the contractual arrangements with the plaintiff were made in good faith and were not false or misleading, the undersigned had no intent to defraud or deceive plaintiff, and the undersigned did not enter into any contract with plaintiff, on behalf of the owner or otherwise, with the intent to fail to perform that contract."

The motion for a summary judgment was properly granted on the fraud and negligent misrepresentation claims for relief.

II

Plaintiff requested and the court refused to give the following instruction:

"When no time for performance is specified, the law implies a reasonable time depending upon the nature of the contract, the terms thereof and the circumstances appearing from, the conduct of the parties." Plaintiff's requested Instruction No. 11.

As his second issue on appeal, plaintiff contends the failure to give this instruction to have been error. The relevance of this issue and the argument thereon, consisting of two pages in plaintiff's brief, is not apparent. It does not pertain to the question of whether or not the contract applied to one or to eight buildings. A specific time frame for completing one building or all eight buildings was not specified since such was dependent on pre-sales of individual units, a condition which was to some extent beyond the control of the builders.

■ Plaintiff's proposed instruction is a correct statement of the law. *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436, 439 (1976). However, we agree with defendant and the trial court that the instruction is not relevant or proper under the facts of this case. The trial court extensively instructed the jury as to contract interpretation, and correctly refused plaintiff's requested Instruction No. 11.

III

The following verdict form was submitted to the jury:

"VERDICT

"We, the jury, duly and regularly impaneled and sworn to try the issue in the above-entitled cause, submit the following answers to the questions submitted by the court:

"1. Do you find that the January 27, 1982 written contract between the parties applied to the entire Lot 13 Project of eight buildings?

"Yes ____

"No ____

"2. ANSWER ONLY IF YOU AN-SWERED # 1 "Yes": Do you find that defendants properly terminated the contract after substantial completion of Building 4400, for failure of plaintiff to properly perform his duties under the contract?

"Yes ____

"No ____

"3. ANSWER ONLY IF YOUR AN-SWER TO # 1 IS "Yes" and your AN-SWER TO # 2 IS "No": What is the dollar amount of damages to be awarded to plaintiff for the defendant's failure to perform the contract?

"$_____ (if applicable)

"4. ANSWER ONLY IF YOUR AN-SWER TO # 1 IS "No": What is the dollar amount of damages to be awarded to plaintiff for his services performed on the foundation and backfill on the Lot 13 Project?

"$_____

"_____

Foreman"

Plaintiff now argues that this verdict form was inadequate in that there was no interrogatory asking if the defendant was estopped to deny that the written contract applied to the entire Lot 13 Project.[2]

▉▉▉ There is no showing in the record that plaintiff objected to this aspect of the verdict form. If plaintiff "wanted the jury to divulge such information, it should have requested such a form of verdict." *Rissler & McMurry Company v. Atlantic Richfield Company*, Wyo., 559 P.2d 25, 30 (1977). As in that case, here we find no request for a form of verdict different than that used. The submission or failure to submit a form of special verdict with answers to interrogatories is in the sound discretion of the trial judge. *Rissler &*

*McMurry Company v. Atlantic Richfield Company*, supra; *Anderson v. Foothill Industrial Bank*, supra; *Murphy v. Smith Trailer Sales, Inc.*, Wyo., 544 P.2d 1006, 1010 (1976).

▉▉▉ Inasmuch as plaintiff failed to object to the form of verdict given and failed to offer a different form of verdict, he cannot now complain. Furthermore, in light of the instruction on estoppel and the form of verdict that was in fact used, plaintiff has not shown how he was prejudiced.

IV

On December 22, 1982, defendant made an offer of judgment in the amount of $6,001, pursuant to Rule 68, W.R.C.P.[3] The offer was rejected by the plaintiff. On June 21, 1984, after trial to a jury, plaintiff was awarded $965, an amount significantly less than that previously offered by defendant. Accordingly, defendant moved the trial court to award reimbursement of $2,579.58 in costs. The court denied this motion and did not award any costs to defendant. Defendant now asks us to review this ruling.

In opposition, plaintiff raises questions as to the timeliness of defendant's notice of cross-appeal, failure to designate necessary portions of the record as the record on appeal, and failure by defendant to support the cross-appeal by cogent arguments and proper authority.

We disposed of the matter pertaining to timeliness of the cross-appeal and designation of record in our order denying plaintiff's motion to dismiss and granting permission to designate additional material for record on appeal. The notice was timely and a proper record is before us. We need not address such again. The citations and

---

2. Plaintiff requested an instruction on estoppel, it being plaintiff's argument that defendant was estopped from denying the existence of a contract for the entire Lot 13 Project; and the trial court so instructed the jury.

3. Rule 68, W.R.C.P., provides in part:
"At any time more than ten (10) days before the trial begins, a party defending against a

claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. * * * If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. * * *"

argument in defendant's brief are sufficient to refute plaintiff's accusations as to lack of cogent argument and of supporting authority in such brief.

In his affidavit in support of his motion relating to costs to be reimbursed, defendant's attorney states in part, on behalf of defendant:

"7. The Defendants have incurred costs aggregating $2,579.58 since the making of such Offer of Judgment, consisting of: $2,471.00 in costs charged by court reporters for the taking of depositions and the copying of deposition transcripts, and $108.58 in costs of preparing enlarged exhibits for trial (Pioneer Press)."

In *Roberts Construction Company v. Vondriska*, Wyo., 547 P.2d 1171, 1182 (1976), we noted:

" * * * What constitutes proper costs in an action * * * is not very clearly established by either statute or rule. * * * "

Sections 1–14–101 through 1–14–127, W.S.1977, specify certain costs, e.g., witness fees, service of process fees, etc. Section 1–14–126 (Cum.Supp.1985) thereof provides in pertinent part:

"In other actions the court may award and tax costs and apportion them between the parties on the same or adverse sides as it deems right and equitable. * * * "

We have always recognized that the determination of those costs to be taxed pursuant to Rule 54(d), W.R.C.P. [4] are properly within the discretion of the trial court. Rule 68, W.R.C.P. (see fn. 3) is mandatory in that it provides that the offeree "must" pay costs incurred after making the offer. The question here presented is whether or not deposition expenses made after making of the offer, under Rule 68, W.R.C.P., are properly included in reimbursable costs.[5] The purpose of the rule is to encourage settlement and to penalize the offeree for causing extra expenses when he refuses that which is later found to be a reasonable offer. This consideration could lead to including expense of depositions taken after the offer as properly included costs since the expense would not have been incurred but for the refusal to take the offer. On the other side of the argument, there seems to be a tendency in some instances to overdo the discovery procedure, both with reference to the number of people deposed and with reference to the extent of the depositions and interrogatories. It would seem unfair to charge *unnecessary* costs to the offeree. The determining factor, then, in allowing such deposition expense as costs would be a reasonable necessity for the deposition. The determination of the reasonable necessity is properly left to the discretion of the trial judge. We recently said in *State and G.M. Kinniburgh v. Dieringer*, Wyo., 708 P.2d 1 (1985):

"With respect to costs of discovery depositions, we espouse the rule that if the discovery deposition is reasonably necessary for the preparation of the case, then there is no abuse of discretion on the part of the district judge in awarding such costs. See for example, *Bailey v. Meister Brau, Inc.*, 535 F.2d 982 (7th Cir.1976); *Griffin v. Collins*, 443 F.Supp. 1010 (S.D.Ga.1978); *George R. Hall, Inc. v. Superior Trucking Co., Inc.*, 532 F.Supp. 985 (N.D.Ga.1982); *Kraeger v. University of Pittsburgh*, 535 F.Supp. 233 (W.D.Pa.1982); *Wade v. Mississippi Cooperative Extension Service*, 64 F.R.D. 102 (N.D.Miss.1974); *Mastrapas v. New York Life Insurance Co.*, 93 F.R.D. 401 (E.D.Mich.1982). With respect to the exercise of discretion as to such costs, however, the burden must be

---

4. Rule 54(d), W.R.C.P., provides:
 "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the state of Wyoming, its officers or agencies, shall be imposed only to the extent permitted by law."

5. Our discussion and holding in this case relative to deposition expense as costs is restricted to the application thereof to Rule 68, W.R.C.P. The question as to application in other respects is not before us.

upon the party seeking the award of costs to justify to the district court that those costs were reasonably necessary for the preparation of the case for trial. If the depositions are introduced at the trial, or are used for purposes of impeachment or refreshing the recollection of a witness at the trial that would ordinarily satisfy the burden of demonstrating that they were reasonably necessary. Other uses of the deposition in connection with the trial proceedings such as motions for summary judgment might serve to persuade the district court that the depositions were reasonably necessary, but it would not be required to so conclude. \* \* \* "

In this case, the trial court indicated that it relied on the depositions of Roland Duffy, Arthur Brown and Tony Kimmi in granting partial summary judgment in favor of defendant. This fact, coupled with the mandatory direction in Rule 68, W.R.C.P., supra, causes us to remand case No. 84–308 to allow review of defendant's motion for reimbursement of costs under the standard quoted above from *State and G.M. Kinniburgh v. Dieringer*, supra.

We have found no authority in this state, nor have we been cited to any, for the proposition that the expense of preparing enlarged exhibits for trial is a taxable cost.

We affirm Case No. 84–307 and remand Case No. 84–308 for the purpose of reconsideration of defendant's motion for reimbursement of costs.